Filed 6/4/14  In re Walter R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re WALTER R., et al., Persons Coming Under the Juvenile Court Law. | B249621 |
| | (Los Angeles County Super. Ct. No. CK73495) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| M. M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  D. Zeke Zeidler, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel for Plaintiff and Respondent.

Appellant M. M. (mother) appeals from the juvenile court's orders terminating jurisdiction over her children Walter (born October 2005) and Faith (born December 2006), granting the children's father, Walter R. (father),[1] sole legal custody of the children, and limiting her visits to monitored visits.  We affirm the orders.

## BACKGROUND

**Detention and section 300 petition**

On September 3, 2009, the Los Angeles County Department of Children and Family Services (the Department) filed a petition under Welfare and Institutions Code section 300[2] on behalf of then three-year-old Walter, two-year-old Faith, and their older half siblings, Casey and Camryn.[3]  The petition alleged that there was domestic violence between mother and the father of Casey and Camryn; that mother had a history of substance abuse, including amphetamine, methamphetamine, prescription medication, and alcohol, as well as a history of mental and emotional health problems; and that the family home was filthy and unsanitary.

At the detention hearing held on September 3, 2009, the juvenile court found father, who was incarcerated at the time, to be the presumed father of Walter and Faith and further found prima facie evidence for detaining all of the children.  Mother was accorded monitored visits.

**Jurisdiction and disposition**

In October 2009, the Department reported that the family had multiple referrals between 2005 and 2009, including a voluntary family maintenance case from January to August 2006, and a 2008 dependency case based on mother's substance abuse and father's incarceration and failure to provide for the children.  In the 2008 dependency case, the children were removed from mother's custody, and mother was accorded family

---

[1]     Father is not a party to this appeal.

[2]     All further statutory references are to the Welfare and Institutions Code.

[3]     Casey and Camryn are not subjects of this appeal, and their father Markeith C., is not a party to this appeal.

reunification services. The children were returned to mother's care and jurisdiction was terminated in August 2009. The instant case was commenced a few weeks later.

Mother told the Department's social worker that after the 2008 case closed, she became a caregiver for her ill mother and lost the support she needed. She felt stressed and ended up using methamphetamine. Mother said that she "must have stayed high for four days." While under the influence of methamphetamine, mother believed that someone had been shot in the backyard of her home. She put the children in the closet and covered them with a blanket because she thought they were in danger. Mother then telephoned the police. When the police arrived at mother's home, the officers noted that mother was delusional and appeared to be under the influence of drugs. Mother was transported to the hospital, where she tested positive for amphetamines, methamphetamine, and benzodiazepines.

Following a mediation, mother entered a plea of no contest to an amended petition under section 300, subdivisions (b) and (g), based on mother's history of drug abuse, recent positive toxicology screen, recent hospitalization after she experienced visual and auditory hallucinations, the unsanitary condition of the home, and father's failure to provide. The juvenile court ordered mother to attend a drug rehabilitation program with weekly random testing, parent education, individual counseling, and a mental health assessment. The court accorded mother four hours of unmonitored visits in a public setting, so long as she remained in compliance with her case plan.

**Review proceedings and return of children to mother's custody**

In February 2010, the Department reported that mother had completed a parenting course and had enrolled in individual counseling. Mother was progressing well in her programs, but she continued to test positive for opiates and morphine. The juvenile court ordered mother's visits to be unmonitored after she submitted five consecutive clean drug tests and gave the Department discretion to further liberalize the visits.

In June 2010, mother was arrested for making criminal threats against the maternal grandmother's caregiver, who had stolen money and other personal possessions. Mother continued to make progress in her programs and appeared motivated to make positive

3

changes in her life. Her drug testing, however, was still inconsistent, and she had not progressed to unmonitored visits with the children.

In August 2010, the juvenile court found mother in partial compliance with her case plan and ordered continued reunification services for her. The court further stated that mother's visits could be unmonitored in a public setting after she submitted six consecutive clean drug tests.

At the time of the October 2010 twelve-month review hearing, mother was having serious health issues that required surgery and multiple hospitalizations. The juvenile court continued the matter and ordered continued reunification services.

In March 2011, the Department reported that since December 2010, mother had recovered sufficiently to resume visits with the children. Mother was compliant with all aspects of her case plan, other than submitting to a mental health assessment. After two social workers assessed mother's home and observed mother to be appropriate with the children and bonded to them, the Department liberalized mother's visits to unmonitored.

In April 2011, the juvenile court accorded mother overnight visits with the children, provided mother's oldest child was present and mother remained compliant with her case plan. On June 16, 2011, the juvenile court ordered the children returned to mother's custody, with in-home family maintenance services. In December 2011, the juvenile court found mother in compliance with her case plan and ordered continued family maintenance services.

**Section 387 petition**

On March 5, 2012, the Department filed a section 387 petition after mother tested positive for cocaine and failed to take her prescribed psychotropic medication. The juvenile court found a prima facie case for detaining the children and ordered them detained from mother's care. On March 28, 2012, mother was hospitalized after attempting to commit suicide.

In June 2012, the Department reported that mother was receiving treatment at a pain management clinic that included methadone treatment for her addiction. Mother was also enrolled in a group parenting program and a drug program that included random

4

testing. Mother demonstrated a willingness to get better; however, she failed to appear for drug testing several times and tested positive for pain medications that had not been prescribed as part of her pain management program.

At the June 14, 2012 adjudication hearing, the juvenile court sustained the section 387 petition and terminated mother's reunification services. The court accorded mother monitored visits and unmonitored visits for father, who had been released from custody.

**Placement of children with father and mother's section 388 petition**

In October 2012, the Department reported that mother visited weekly with Walter and Faith. Father also visited consistently, and his visits were liberalized to weekend overnight visits. Walter and Faith were forming strong attachments to father and said they wanted to live with him. On October 15, 2012, the juvenile court ordered Walter and Faith placed in father's home.

On October 15, 2012, mother filed a section 388 petition seeking return of the children to her custody, or in the alternative, reinstatement of family reunification services. In support of her petition, mother stated she had enrolled in a new drug treatment program in April 2012, attended group sessions three days a week, tested negative for drugs, and was reducing her reliance on methadone. According to a progress report from the treatment program, mother had gained independence. She was no longer taking anti-depressant medication and was handling her own finances while caring for her ailing mother. The juvenile court granted mother a hearing on her section 388 petition.

In November 2012, mother informed the Department that she was receiving mental health treatment at Barbour and Floyd Medical Associates and attending weekly sessions with a psychiatrist. Mother's doctor stated that mother was not currently on any psychotropic medication but was scheduled to be evaluated for medication.

At the November 15, 2012 hearing on mother's section 388 petition, the juvenile court granted the petition in part, according mother an additional six months of reunification services.

**Termination of jurisdiction**

In March 2013, Walter and Faith remained placed with father, who was actively involved in all aspects of the children's lives. He took them to and from school, helped them with their homework, and attended parent-teacher conferences. Father remained unemployed but received support from his aunt and cousin, with whom he was residing.

Mother visited with Walter and Faith at a park on Sundays but had missed five visits since the children were placed with father. She continued to participate in her program services and appeared determined to remain drug free, but struggled to do so. Mother's case manager at the pain management medical clinic reported that mother's daily methadone dosage had been increased, and she had tested positive for barbiturates, codeine, and amphetamines on several occasions.

On March 30, 2013, the social worker met with mother's treatment professionals, who acknowledged that mother was not presently capable of having the children returned to her care but needed more time to progress in treatment. Mother had been diagnosed as bipolar, and her medical team was trying various medications that would not exacerbate her other health issues.

Mother testified at the review hearing held on April 30, 2013. She stated that she had continued in services and was addressing her mental health issues by seeing a psychologist, a psychiatrist, and a psychotherapist. Mother stated that she had been participating in a methadone treatment program for one year, but admitted that her methadone dosage had increased during the past six months.

Mother said she visited with the children every weekend and that she had some overnight visits monitored by father. She asked the court to grant her joint legal and physical custody of the children, or at a minimum, joint legal custody and unmonitored visits.

Father testified that he had been monitoring mother's visits since October and had not seen anything that concerned him during the visits, which went well. He acknowledged, however, that he was present during an April 13, 2013 visit during which mother fell asleep. A service log prepared by the Department's social worker concerning

that visit reported that mother had fallen asleep several times during the visit, prompting half-sibling Casey to say, "I think my mom is high again. She's been out of it and half asleep all day." After the visit, father had told the social worker that he had "never seen [mother] this bad before." During his testimony at the hearing, father admitted that he would be concerned if the children were left alone with mother when she was in that condition.

The Department's social worker, who had been assigned to the family's case for approximately two years, testified that she was present at the March 20, 2013 meeting at which mother's psychologist and her program director at the New You Center agreed that mother was not capable of having the children returned to her custody. The social worker further testified that mother appeared to be "pretty unstable in her mental health right now" and that there were days when mother was "really good," and days when she was "out of it," or "irate" and "very upset."

After hearing argument from the parties, the juvenile court terminated jurisdiction over Walter and Faith, accorded father sole legal and physical custody, and granted mother monitored visits at least once a week. Mother's attorney then asked the juvenile court to specify what mother needed to accomplish before seeking to have the custody order changed in family court. In response, the juvenile court stated that mother needed to complete her drug treatment program, including random and on demand testing, and make substantial progress in individual counseling, psychiatric care, and medication.

This appeal followed.

## MOTHER'S CONTENTIONS

Mother contends the juvenile court erred by granting father sole legal custody of Walter and Faith, rather than according her joint legal custody with father. Mother further contends the juvenile court improperly extended its jurisdiction by specifying what mother needed to accomplish before seeking to modify the orders in family court. Finally, mother claims the juvenile court abused its discretion by ordering her visits to remain monitored.

7

## DISCUSSION

### I. Custody order

"The juvenile court has exclusive jurisdiction to make custody orders over dependent children as specified in the Welfare and Institution Code. (§ 304.)" (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 (*Jennifer R.*).) Section 362.4 provides that when the juvenile court terminates its jurisdiction over a dependent minor, the court may issue an order determining the custody of the minor. If no action relating to the minor's custody is pending in the superior court, the juvenile court order may be used as the basis for initiating such an action. Section 362.4 also provides than any juvenile court order issued pursuant to that statute shall continue until modified or terminated by a subsequent order of the superior court. (*Jennifer R.*, at p. 712.)

A juvenile court's custody determination in a dependency proceeding is reviewed for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) Under this standard, a reviewing court will not disturb the juvenile court's determination unless it is arbitrary, capricious, or patently absurd. The reviewing court has no authority to substitute its decision for that of the juvenile court. (*Id.* at p. 319.)

The record discloses no abuse of discretion by the juvenile court. In according father sole legal and physical custody of the children, the juvenile court considered mother's history and progress in treatment. Mother's instability and mental health issues had not resolved by the time of the hearing. She had a begun a new medication regimen that made her drowsy, and she was subject to unpredictable mood swings. Her methadone dosage levels continued to increase during the six months preceding the hearing. Neither mother's psychologist nor her program manager believed she should have custody of the children.

*Jennifer R.*, which mother attempts to distinguish, is analogous to the instant case. The mother in *Jennifer R.* appealed an order granting sole legal custody of her child to the child's father. The mother argued, as does mother in this case, that the evidence in the record did not support the denial of joint legal custody. The appellate court affirmed the order, citing mother's history of emotional disturbances and mental illness, her

8

inability to care for herself and her children, and her failure to progress in overcoming the problems leading to juvenile court jurisdiction, including substance abuse problems. (*Jennifer R., supra*, 14 Cal.App.4th at p. 713.)

Here, as in *Jennifer R.*, the evidence showed that mother had not progressed sufficiently in overcoming the problems that led to the children's removal from her custody. Her methadone levels were increasing, and her mood and behavior were erratic. The juvenile court did not err by concluding that granting mother joint legal custody was not in the best interests of the children. The order granting father sole legal custody was not an abuse of discretion.

## II. Juvenile court's response to mother's counsel

Mother claims the juvenile court's response to a question asked by her counsel as to what mother would need to do in order to have the custody order changed was an unauthorized attempt to preclude future modification of the order. Because mother's counsel invited the alleged error by asking the trial court to specify what mother needed to do to change the order, mother is estopped from asserting that alleged error as a ground for reversal on appeal. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)

The record discloses no error on the part of the trial court, in any event. The juvenile court's response, that mother needed to complete her drug program, drug test, and make substantial progress in individual counseling, psychiatric care, and medication, simply stated the applicable statutory standard for seeking a subsequent change of order in the family law court. Under subdivision (d) of section 302, a custody or visitation order issued by the juvenile court at the time the court terminates its jurisdiction remains in effect after that jurisdiction is terminated and may not be modified in any subsequent family law proceeding unless the court in such proceeding "finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).) The juvenile court's response was not an improper attempt to preclude future modification of the custody order.

### III.  Monitored visits

An order setting visitation terms is reviewed for abuse of discretion.  (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.)  An abuse of discretion does not occur unless the juvenile court "'"'"has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination."'"'"  [Citations.]"  (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.)  A visitation order may not jeopardize the safety of the child.  (§ 362.1, subd. (a)(1)(B).)

Mother's unauthorized drug use and mental instability continued to the time of the April 30, 2013 evidentiary hearing at which the juvenile court terminated jurisdiction.  She had begun a new medication regimen that made her drowsy, as was evident during an April 13, 2013 visit with the children, and that raised safety concerns about unmonitored visits with children as young as Walter and Faith.  The order continuing monitored visits was not an abuse of discretion.

### DISPOSITION

The orders granting father sole legal and physical custody and according mother monitored visits are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.*
FERNS


_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10